COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

)
JIMMY LEE PINSON,                                       )                  No. 08-02-00327=CR
)
                                    Appellant,                        )                             Appeal from
)
v.                                                                          )                  112th District Court
)
THE STATE OF TEXAS,                                   )                  of Reagan County, Texas
)
                                    Appellee.                          )                  (TC# 1322-A)

MEMORANDUM OPINION

            Jimmy Lee Pinson appeals his conviction for two counts of aggravated sexual assault of a
child. A jury found Appellant guilty and assessed punishment at life imprisonment. We affirm.
FACTUAL SUMMARY
            Although Appellant has not raised issues of legal or factual sufficiency, we will include a
brief statement of the facts. Appellant and his wife had been friends with the parents of the victim,
“Zack,” who was seven at the time of the events giving rise to this prosecution. Appellant’s wife
was a frequent babysitter for Zack. Around October 1999, Zack’s mother picked him up from
Appellant’s residence. Later that night when she put Zack in the tub and started running his bath,
she noticed that the boy’s penis was red and asked him if anyone had ever touched his private parts. 
At first, Zack answered no. She then left the bathroom and returned shortly to check the water level. 
Zack asked whether she would be mad about the question she had asked. When she asked again
whether anyone had ever touched his private parts, Zack answered that Appellant had. Zack told his
mother that Appellant had put his hand and mouth on the child’s “petey.” He also said that he had
put his mouth on Appellant’s “petey.” This had occurred four times--in the computer room, in
Appellant’s bedroom, and outside in Appellant’s camper. Pertinent to the issues raised in this
appeal, Zack testified at trial that he and Appellant spent time on the computer looking at pictures
of naked men and women. 
EXTRANEOUS OFFENSES
            In his first point of error, Appellant contends that the trial court erred in admitting State’s
Exhibits 18-34 because the sexually offensive pictures were not shown to be relevant or connected
to Appellant and because the probative value of the pictures was substantially outweighed by their
unfair prejudice as extraneous offenses or acts. Exhibits 18-27 contain pictures of male nudity and
homosexuality; exhibits 28-34 are sexually-explicit animated cartoons. Appellant claims that while
there was evidence that whoever put the images on the computer had the requisite state of mind,
there was no evidence that it was Appellant who had done so. 
Connection and Relevance under Code of Criminal Procedure Article 38.37
            Appellant first argues that Article 38.37 is inapplicable because he was not sufficiently
connected to the pictures taken from his computer. He suggests that others had access to the
computer and knew how to look up such web sites, or alternatively, that the pictures could have been
placed there accidently. He also complains that Zack did not remember what the naked people were
doing in the pictures and never said that he and Appellant watched cartoons. Because Zack was not
asked to identify the exhibits and there was no evidence showing who put the images on the
computer, Appellant concludes that the images could not be considered “crimes, wrongs, or acts
committed by the defendant against the child” within the ambient of Article 38.37. We disagree.
Beyond a Reasonable Doubt Standard
            Before admitting evidence of extraneous offenses, the trial court must determine pursuant
to Rule 104(b) whether a jury could find beyond a reasonable doubt that the defendant committed
the extraneous offenses. Harrell v. State, 884 S.W.2d 154, 160 (Tex.Crim.App. 1994). By
admitting these exhibits, the trial court made the requisite determination. Harrell, 884 S.W.2d at
161. The exhibits were images taken from the hard drive of Appellant’s computer, representing a
small sample of files found. They corroborated Zack’s testimony that he was shown sexually-explicit material by Appellant. Further, the State argued that it restricted the images to relevant
issues of state of mind, that the prosecution involved a homosexual act against a child, that the
homosexual pictures were further relevant to state of mind, and that the images were time stamped
within six to eight months before Zack indicated the offenses occurred. 
            The trial court instructed the jury that it could not consider the extraneous offenses unless
it believed beyond a reasonable doubt that Appellant participated in the acts. Even then, the acts
could only be considered to show the intent of Appellant, his state of mind, Zack’s state of mind, or
the relationship between the two. Although Appellant complained there was no way to determine
exactly who loaded the files on the computer or whether the sites were visited accidently, the jury
could have found beyond a reasonable doubt that Appellant did so.
Affirmative Link
            We are next asked to determine whether the State established a sufficient link
between Appellant and the computer images. We begin with Darby v. State, 922 S.W.2d 614, 619
(Tex.App.--Fort Worth 1996, pet. ref’d). There, the defendant objected to the admission of a
sexually-explicit magazine found in his bedroom closet. The trial court admitted it as relevant to
intent. The appellate court noted that possession of the magazine was not unlawful and the magazine
itself was not contraband. Id. Only if the magazine had been contraband would the State have to
affirmatively link the defendant to it. Id., citing Travis v. State, 638 S.W.2d 502, 503
(Tex.Crim.App. 1982). The State had the burden to prove intent, which could be shown through
circumstantial evidence. The magazine provided that circumstantial evidence. Id. at 620, citing
Arnott v. State, 498 S.W.2d 166, 177 (Tex.Crim.App. 1973). 
            Here, Appellant has not been prosecuted for possession of contraband and the State did not
have to affirmatively link Appellant to the computer images as long as the jury could reasonably
infer that Appellant both knew about the images and had control over them. See id. at 619. Further,
the indictment made it necessary for the State to prove intent or knowledge to “cause[] the sexual
organ of a child to contact or penetrate the mouth, anus, or sexual organ of another person, including
the actor” and to “cause[] the penetration of the mouth of a child by the sexual organ of the actor.” 
Tex.Pen.Code Ann. § 22.021(a)(1)(B)(ii), (iii)(Vernon Supp. 2004). The images were
circumstantial evidence which is admissible if it tends to prove an issue or constitutes a link in the
chain of proof even though, standing alone, it might not justify a verdict. Darby, 922 S.W.2d at 620,
citing Knapp v. State, 504 S.W.2d 421, 437 (Tex.Crim.App. 1973).
            Evidence that the sexually explicit images were found on Appellant’s computer--when
considered with the evidence that Appellant showed them to Zack causing Zack to put his mouth on
Appellant’s penis and causing him to put his own mouth on Zack’s penis--presented affirmative
circumstantial links between the images and the charged offenses. See also id. (holding that a
magazine found in the defendant’s bedroom closet that contained sexually-explicit photographs of
a young female posing with a teddy bear constituted an affirmative circumstantial link when
considered with evidence that the defendant pretended to be a photographer and had a young female
pose with a teddy bear and testimony that defendant reached under the female’s blouse, skirt, and
underwear to touch her inappropriately). 
Relevance under Article 38.37
            Article 38.37 provides: 
Sec. 1. This article applies to a proceeding in the prosecution of a defendant for an
offense under the following provisions of the Penal Code, if committed against a
child under 17 years of age:
 
(1) Chapter 21 (Sexual Offenses);
(2) Chapter 22 (Assaultive Offenses);
(3) Section 25.02 (Prohibited Sexual Conduct);
(4) Section 43.25 (Sexual Performance by a Child); or
(5) an attempt or conspiracy to commit an offense listed in this section.
Sec. 2. Notwithstanding Rules 404 and 405, Texas Rules of Criminal Evidence,
evidence of other crimes, wrongs, or acts committed by the defendant against the
child who is the victim of the alleged offense shall be admitted for its bearing on
relevant matters, including:
 
(1) the state of mind of the defendant and the child; and
(2) the previous and subsequent relationship between the defendant and the
child.
 
Sec. 3. On timely request by the defendant, the state shall give the defendant notice
of the state's intent to introduce in the case in chief evidence described by Section 2
in the same manner as the state is required to give notice under Rule 404(b), Texas
Rules of Criminal Evidence.
 
Sec. 4. This article does not limit the admissibility of evidence of extraneous crimes,
wrongs, or acts under any other applicable law.

Tex.Code Crim.Proc.Ann. art. 38.37 (Vernon Pamphlet 2004). 
            Appellant claims that evidence of the content of a computer’s hard drive does not constitute
a crime or other act against a child within the purview of Article 38.37. The State counters that the
exhibits were properly admitted because they assisted the jury in understanding the relationship
between Appellant and Zack inasmuch as Appellant taught Zack how to access the web sites. The
State also contends that the images explained why Zack waited to tell his parents about the abuse,
they showed Zack’s state of mind because Appellant told Zack that he would get into trouble if he
told anyone about the pictures, they demonstrated Appellant’s intent in showing Zack the images,
and they explained Zack’s compliance. 
            We find some guidance in Broderick v. State, 35 S.W.3d 67, 79 (Tex.App.--Texarkana 2000,
pet. ref’d). Broderick involved the sexual assault of a child who while visiting the defendant, played
games and made cards on his computer. At trial, an FBI agent who was an expert in computer
reconstruction testified that he had examined the hard drive of the defendant’s computer. While he
found no pornographic images, he had found approximately one hundred deleted files whose file
names remained on the computer. Id. at 78. The agent recognized a number of the files to be
sexually-explicit pictures. Id. On appeal, the defendant argued ineffective assistance of counsel for
his trial counsel’s failure to object to the evidence as inadmissible evidence of an extraneous offense. 
Id. The victim testified that the defendant would show her pictures of young girls engaged in sexual
acts with male adults and then tell her she would have to do these things with him. Id. The court
found the evidence admissible under Rule 404(b) to show the defendant’s attempts to engage the
child in sexual activity. Id. We find this analysis persuasive.
 

Conclusion
            We conclude that the images were relevant and fell within the purview of Article 38.37 to
show the state of mind of both Appellant and Zack, as well as the relationship between them. See
also Phelps v. State, 5 S.W.3d 788, 797 (Tex.App.--San Antonio 1999, pet. ref’d)(holding prior
sexual acts between defendant and victim were admissible to show the nature of the relationship and
to explain the victim’s compliance); McCoy v. State, 10 S.W.3d 50, 54 (Tex.App.--Amarillo 1999,
no pet.) (finding that prior sexual abuse clearly falls within the purview of Article 38.37 to show the
relationship between the defendant and the victim); Walker v. State, 4 S.W.3d 98, 103 (Tex.App.--Waco 1999, pet. ref’d) (holding that extraneous acts were admissible under Article 38.37 when they
showed the defendant continually subjected the victim to sexual and physical assaults and provided
an explanation why the victim did not report the abuse sooner). 
Challenge under Rule 403
            Appellant also challenged the exhibits under Rule 403, which provides:
Although relevant, evidence may be excluded if its probative value is substantially
outweighed by the danger of unfair prejudice, confusion of the issues, or misleading
the jury, or by considerations of undue delay, or needless presentation of cumulative
evidence.

Tex.R.Evid. 403. When a party lodges a Rule 403 objection, the trial court must conduct a
balancing test to determine whether the probative value of the evidence substantially outweighs its
prejudicial value. See Rojas v. State, 986 S.W.2d 241 (Tex.Crim.App. 1998); Williams v. State, 958
S.W.2d 186 (Tex.Crim.App. 1997); Walker, 4 S.W.3d at 103. While the trial court must conduct
this balancing test, it need not enter its thought processes on the record. See Rojas, 986 S.W.2d at
250. If the record is silent, we will presume that the trial court properly conducted the test prior to
ruling on the objection. See id. 
            Almost all evidence offered by the prosecution will be prejudicial to the defendant; however,
Rule 403 excludes only evidence that is unfairly prejudicial. Caballero v. State, 919 S.W.2d 919,
922 (Tex.App.--Houston [14th Dist.] 1996, pet. ref’d). Unfair evidence has an undue tendency to
suggest that a decision be made on an improper basis, commonly an emotional one. Montgomery
v. State, 810 S.W.2d 372, 389 (Tex.Crim.App. 1991). Since Rule 403 favors the admissibility of
relevant evidence, there is a presumption that relevant evidence will be more probative than
prejudicial. Massey v. State, 933 S.W.2d 141, 154 (Tex.Crim.App. 1996).
            Appellant asserts that the exhibits violated Rule 403 because the State’s evidence on intent
was not contradicted, the exhibits were not connected to Appellant, and the exhibits were quite likely
highly offensive to the jury. In support of this argument, he directs our attention to Bishop v. State,
869 S.W.2d 342 (Tex.Crim.App. 1993) and DeLeon v. State, 77 S.W.3d 300 (Tex.App.--Austin
2001, pet. ref’d).
            In Bishop, the court found that evidence of the defendant’s sexual misconduct unduly
prejudiced some of the jurors because, while it pertained to practices that were not defined as
criminal offenses or misconduct, the practices were considered improper, immoral, and highly
offensive by segments of the population. 869 S.W.2d at 346. At issue was sexual behavior that the
defendant had engaged in with his ex-wife. Id. at 344. DeLeon involved extraneous offenses that
the defendant had committed against third parties. 77 S.W.3d at 316. There, the court found that
the probative value of unadjudicated third party extraneous offenses was substantially outweighed
by the danger of unfair prejudice because the jurors could have lost sight of the specific issues
framed by the indictment and convicted the defendant out of revulsion for his conduct as a serial
child molester. Id. Here, Appellant showed Zack sexually-explicit images, an act which involved
the victim and not a third party. As such, Bishop and DeLeon are distinguishable.
            Factors to be considered by the trial court include: (1) how compelling the extraneous offense
evidence serves to make a fact of consequence more or less probable--a factor which is related to the
strength of the evidence presented by the proponent to show the defendant in fact committed the
extraneous offense; (2) the potential the other offense evidence has to impress the jury “in some
irrational but nevertheless indelible way;” (3) the time the proponent will need to develop the
evidence, during which the jury will be distracted from consideration of the indicted offense; (4) the
force of the proponent’s need for this evidence to prove a fact of consequence, i.e., does the
proponent have other probative evidence available to him to help establish this fact, and is this fact
related to an issue in dispute. Montgomery, 810 S.W.2d at 389-90.
            Appellant specifically complained that the exhibits were unduly prejudicial because they had
little probative value, were not relevant to any contested fact, and were highly offensive to the jury. 
He also alleged that more time was spent on proving the extraneous offenses than the charges in the
indictment, creating a likelihood that jurors were distracted from the main issues. We are convinced,
however, that the probative value of the pictures substantially outweighed any danger of unfair
prejudice. The computer images were strong evidence of Appellant’s and Zack’s states of mind as
well as their relationship. They were highly probative of Appellant’s intent to engage in the charged
offenses. Although the images had the potential to impress the jury, they were not so prejudicial as
to affect the jury in an irrational manner. While sexually related misconduct and misconduct
involving children are inherently inflammatory, the computer images did not create a grave potential
for the jury to find Appellant guilty on an improper basis. The exhibits were representative of those
images frequently shown to Zack and put the offense into context for the jury. Other acts of
misconduct between the defendant and the child victim are relevant to show how a person in a
position of authority, custody, or care of a young child has developed an unnatural attitude and
relationship toward that child to explain the charged act--an act that would otherwise seem wholly
illogical and implausible to the average juror. Ernst v. State, 971 S.W.2d 698, 700 (Tex.App.--Austin 1998, no pet.), quoting Johns v. State, 155 Tex.Crim. 503, 236 S.W.2d 820, 823 (1951). It
not only shows that a peculiar relationship exists, but also how and why the defendant achieved
dominance over the child. Id.
            The trial court is given wide latitude to admit or exclude evidence of other crimes, wrongs,
or acts. Montgomery, 810 S.W.2d 372, 390. As long as the trial court’s ruling was within the zone
of reasonable disagreement, we must not intercede. See id. at 391. We find no abuse of discretion
in the trial court’s evidentiary ruling. Point of Error One is overruled. 
JURY ARGUMENT
            In Point of Error Two, Appellant complains of improper jury argument, alleging that the
prosecutor articulated community demands and expectations for conviction.
Factual Summary
            During closing arguments at the guilt-innocence stage, the prosecutor argued:
Ladies and gentlemen, this case is from Reagan County. Makes it no less
important because it’s being tried here in your county. Maryland Avenue could well
be -- Maryland Street in Reagan, in Big Lake, could well be Avenue E, right on the
steps of this courthouse, down the street from you, from me in Fort Stockton.
 
Ladies and gentlemen, . . . [t]his is important to us here in Crockett County. 
This is important to people in the United States, for you to find this defendant guilty
because of the depraved things he did to this child . . . ladies and gentleman. It’s
clear. I’m not going to take it anymore.

Appellant objected that the argument went beyond the permissible bounds of community standards. 
The State responded that it merely constituted a plea for law enforcement.
Permissible Bounds of Jury Argument
            Permissible jury argument is confined to four broad areas: (1) summations of the evidence;
(2) reasonable deductions from the evidence; (3) answers to arguments of opposing counsel; and (4)
pleas for law enforcement. Dinkins v. State, 894 S.W.2d 330, 357 (Tex.Crim.App.), cert. denied,
516 U.S. 832, 116 S.Ct. 106, 133 L.Ed.2d 59 (1995). Generally speaking, jury argument constitutes
reversible error only when it is extreme or manifestly improper, or injects new and harmful facts into
evidence. McKay v. State, 707 S.W.2d 23, 36 (Tex.Crim.App. 1985), cert. denied, 479 U.S. 871,
107 S.Ct. 239, 93 L.Ed.2d 164 (1986). In making this determination, the entire argument should be
considered, not just isolated sentences. See Drew v. State, 743 S.W.2d 207, 220-22 (Tex.Crim.App.
1987).
            With regard to pleas for law enforcement, the State may argue the relationship between the
jury’s verdict and the deterrence of crime, as well as the impact of the jury’s verdict on the
community. Borjan v. State, 787 S.W.2d 53, 55-56 (Tex.Crim.App. 1990); Adams v. State, 685
S.W.2d 661, 671 (Tex.Crim.App. 1985); Alexander v. State, 919 S.W.2d 756, 764
(Tex.App.--Texarkana 1996, no pet.). A prosecutor may address the jurors as representatives,
spokespersons, and even as the conscience of the community. See Whittington v. State, 580 S.W.2d
845, 847 (Tex.Crim.App. [Panel Op.] 1979); Barcenes v. State, 940 S.W.2d 739, 749 (Tex.App.--San Antonio 1997, pet. ref’d). It is improper, however, for the State to argue that the community
expects or demands a particular sentence or punishment. Borjan, 787 S.W.2d at 56; Cortez v. State,
683 S.W.2d 419, 420 (Tex.Crim.App. 1984).
            The Court of Criminal Appeals has found the following statements to constitute improper
pleas for community expectations and demands: 
            • “So I ask you, this is a hard decision that you have to make, but I will tell you on behalf of
the State of Texas, an aggravated sexual assault such as this, probation is not what this community
and what the State would want.” [Emphasis in original]. Mata v. State, 952 S.W.2d 30, 33
(Tex.App.-- San Antonio 1997, no pet.).

            • “Now, the only punishment that you can assess that would be any satisfaction at all to the
people of this county would be life [imprisonment].” [Emphasis in original]. Cortez, 683 S.W.2d
at 420.

            • “There are over a million people that stand between him and the penitentiary. They’d want
him to go there if they knew what he did.” Prado v. State, 626 S.W.2d 775 (Tex.Crim.App. 1982).

            • “The people of Nueces County expect you to put this man away.” Pennington v. State, 345
S.W.2d 527, 528 ( Tex.Crim.App. 1961).

            • “The people of De Soto are asking the jury to convict this defendant.” Cox v. State, 247
S.W.2d 262, 263 (Tex.Crim.App. 1952).

            • “The people of this community expect you to put this man away, and the only way you can
do it is to send Willie Porter to the electric chair.” Porter v. State, 226 S.W.2d 435, 436
(Tex.Crim.App. 1950).

            • “I tell you, the people of Matagorda and Jackson Counties are expecting you to do your duty
in this case and assess the defendant's punishment at death.” Peysen v. State, 124 S.W.2d 137, 138
(Tex.Crim.App. 1939).

            • “Look at this courtroom--it is crowded with Polk County people demanding the death
penalty for Bob White.” White v. State, 117 S.W.2d 450 (Tex.Crim.App. 1938).

            • The people are present in this courtroom to see that this defendant gets punished. Cleveland
v. State, 94 S.W.2d 746 (Tex.Crim.App. 1936).

The court disapproved of these arguments because they asked the jury to convict or punish the
defendant based on public sentiment or desire rather than the evidence. Cortez, 683 S.W.2d at 421.
However, the following statements were proper as a plea for law enforcement: 
            • “I am asking you to enforce it. I’m asking you to do what needs to be done to send these
type of people a message to tell them we’re not tolerating this type of behavior in our county.”
Goocher v. State, 633 S.W.2d 860, 864 (Tex.Crim.App. 1982).

            • “I think you will want to give them an answer you can be proud of, that your friends and
neighbors can be proud of.” Whittington, 580 S.W.2d at 847.

            • “You know, you’re here because you have been chosen by the community to make the
decision, and that’s it. . . . -- don’t send a message to the community that you’re going to believe--.” 
Barcenes, 940 S.W.2d at 749. 

            • “[J]urors are sick and tired of this. Jurors are tired of crime because jurors such as yourself
are members of the community you represent. You represent the community.” Caballero, 919
S.W.2d at 924.

            • “You give this man exactly what he deserves and what the victims in this case, or the
victim’s next of kin and loved ones, deserve, for this man to serve a life sentence. It’s only proper,
and it serves the interest of this community as a whole.” [Emphasis in original]. Alexander v. State,
919 S.W.2d 756, 764 (Tex.App.--Texarkana 1996, no pet.).

            • “[I]f you want to find somebody like this innocent of the charge, you may do it, but you will
have to explain your actions to the community.” Goff v. State, 794 S.W.2d 126, 127
(Tex.App.--Austin 1990, pet. ref’d).

            • “A jury verdict in a murder case speaks for this community. You're saying: What will
Travis County tolerate? What does Travis County think human life is worth?” Bell v. State, 774
S.W.2d 371, 375 (Tex.App.--Austin 1989, pet. ref’d).

            • “Probation, in this case, members of the jury, would be a slap on the wrist to the Defendant,
would be a slap in the face to law enforcement in this community.” Lugo v. State, 732 S.W.2d 662,
665 (Tex.App.--Corpus Christi 1987, no pet.).

            • “That when it comes to destroying and enjoying destroying the symbol of our country that
is offensive and it’s serious as far as every American is concerned, and when you go back into that
jury room you represent each and everyone of them; and don’t forget it,” and “consider the
community effect of your verdict.” Johnson v. State, 706 S.W.2d 120, 125 (Tex.App.--Dallas 1986),
rev’d on other grounds, 755 S.W.2d 92 (Tex.Crim.App. 1988), aff’d by, Texas v. Johnson, 491 U.S.
397, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989).

            Measured against this standard, we conclude that the prosecutor’s argument was a proper plea
for law enforcement. The prosecutor intended to stress the importance of the case in order to prevent
nullification, which can occur when jurors distance themselves from crimes that occurred in another
county. In fact, the prosecutor emphasized that the jurors should find Appellant guilty for the acts
he committed against Zack and not due to community desires or expectations. Point of Error Two
is overruled. Having overruled both issues presented for review, we affirm the judgment of the trial
court.


July 29, 2004                                                               
                                                                                    ANN CRAWFORD McCLURE, Justice

Before Panel No. 2
Barajas, C.J., McClure, and Chew, JJ.

(Do Not Publish)